**Dated: January 22, 2018**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:                          )
                                )   Case No. 17-14920-JDL
 JAMES A. GILL,                 )   Ch. 13
                                )
         Debtor.                )

## ORDER DISMISSING CASE

The above matter comes on for consideration upon the *Motion to Dismiss Bankruptcy* filed by CBM Mortgage and Financial Services, LLC (CBM) (the "Motion") [Doc. 6] and the *Debtor's Response and Objection to Creditors Motion to Dismiss Bankruptcy* (the "Response") [Doc. 10]. The Motion presents a case of first impression for this Court: the interpretation of 11 U.S.C. § 109(g)(2)[1] which renders an individual ineligible to be a debtor where the debtor had a prior bankruptcy case pending within one year which case was voluntarily dismissed following the filing of a motion for relief from the automatic stay. The Court concludes that the text of § 109(g)(2) renders the Debtor ineligible for

---

[1]All further references to "Code", "Section", and "§" are to the Bankruptcy Code, title 11 of the United States Code, unless otherwise indicated.

bankruptcy relief under Title 11 and therefore requires dismissal of this case. The following represents the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052 and 9014.

## I. Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1334 and the General Order of Reference entered in this District pursuant to LcvR 81.4. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) and (G), thus the Court may enter final judgment. 28 U.S.C. § 157(b)(1).

## II. Facts

1. CBM is the holder of a first mortgage on five tracts of land owned by the Debtor and his wife in Woodward County, Oklahoma.

2. On October 14, 2016, the Debtor filed a Chapter 13. [Case No. 16-14136]. This was apparently in response to avoid a sheriff's sale on CBM's collateral which was scheduled to take place on October 17, 2016.

3. On January 24, 2017, this Court entered an *Order Approving Stipulation Regarding Objection to Confirmation* by which CBM and Debtor agreed that Debtor would sell as many of his properties as necessary before May 1, 2017, in order to pay CBM's secured claims in full. The Stipulation was incorporated by reference in the *Order Confirming Plan* filed on February 3, 2017.

4. On May 10, 2017, CBM filed a *Corrected Motion for Relief from the Automatic Stay and from Co-Debtor Stay and for Order of Abandonment.*

5. The Corrected Motion for Relief was resolved by the Court entering a Stipulation

and Agreed Order on July 7, 2017. Under the Stipulation the Debtor was to make monthly adequate protection payments to CBM in the amount of $750.00 and to carry sufficient insurance on all properties until the debt owed CBM was satisfied in full. The Stipulation also contained a "drop dead" clause which provided that in the event the Debtor failed to comply with the Stipulation then CBM was permitted to seek *ex parte* relief from the automatic stay.

6. The Debtor failed to make adequate protection payments to CBM and to carry insurance as required by the Stipulation and Agreed Order. Accordingly, on September 12, 2017, this Court entered an *Order Granting CBM Relief from Automatic Stay and from Co-Debtor Stay and Order for Abandonment* and authorizing CBM to take such action as it deems necessary including, but not limited to, foreclosure of its security interest and sheriff sale in state court.

7. On September 14, 2017, the Trustee filed a Motion to Dismiss Case for Failure to Pay Plan Payments.

8. In response to the Trustee's Motion to Dismiss, on October 13, 2017, Debtor filed Debtor's Motion for Voluntary Dismissal of Chapter 13 Case.

9. On October 30, 2017, this Court entered an Order Granting Debtor's Motion for Voluntary Dismissal of Chapter 13 Case.

10. After the dismissal of the case, on November 20, 2017, Debtor's property subject to CBM's mortgage was sold at sheriff's sale. A hearing on confirmation of the sheriff's sale was set for December 7, 2017.

11. The day before the hearing on confirmation of the sheriff's sale the Debtor filed this second bankruptcy on December 6, 2017. On the same day, December 6, 2017, CBM

filed the present Motion to Dismiss.[2]

### III. Discussion

CBM asserts that the case should be dismissed because the Debtor is not eligible to be a debtor under § 109(g)(2) which, in pertinent part, provides as follows:

> [N]o individual . . . may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if...the debtor requested and obtained the voluntary dismissal of the case *following* the filing of a request for relief from the automatic stay provided by section 362 of this title. (Emphasis added).

Section 109(g)(2) renders a person ineligible for bankruptcy relief where five conditions are met: (1) the person is an individual, (2) the person was a debtor in a previous bankruptcy case, ( 3) a party filed a request for relief from the automatic stay in the previous case, (4) the person (debtor) requested and obtained a voluntary dismissal in the previous case following the party's request for relief under § 362, and (5) voluntary dismissal in the previous case occurred within 180 days of the petition date of the person's present case.

At first glance, it appears that all five conditions for dismissal have been met; however, in his Response at ¶ 6, the Debtor states that "[b]ankruptcy courts have taken four (4) approaches to the applicability of the statute creditor sites (sic) . . . including bankruptcy courts which hold the statute applies only if the motion for relief is pending at the time the Debtor requests voluntary dismissal." He then cites three cases purportedly

---

[2]Before discussing the Motion to Dismiss before the Court, it should be noted that there is no automatic stay in effect. The present case was filed on December 6, 2017. The Debtor has taken no action to continue the stay in effect. The stay would have been lifted by operation of law 30 days after the filing date under the provisions of § 362(c)(3)(A). There would also be a presumption of bad faith in filing the second action since the Debtor failed to perform the terms of the plan confirmed by the court. § 362(c)(3)(C)(i)(II)(cc). CBM could have simply waited for the thirty days to run and proceed with its confirmation of the sheriff's sale.

supporting his position.

It is true that while the language of § 109(g)(2) may appear to be straightforward, courts are divided on its proper application. Since its enactment in 1984, courts and academics have struggled as to how to interpret § 109(g)(2) and in particular, the term "following". *In re Gibas,* 543 B.R. 570, 587 (Bankr. E.D. Wis. 2016) (citing *Harry Wright IV, Comment, Must Courts Apply Section 109(g)(2) When Debtors Intend No Abuse in an Earlier Dismissal of Their Case?*, 7 Bankr.Dev. J. 103 (1990); *Ned W. Waxman, Judicial Follies: Ignoring the Plain Meaning of Bankruptcy Code § 109(g)(2),* 48 Ariz. L.Rev. 149 (Spring 2006)).  Three primary interpretive approaches have emerged, and the Tenth Circuit has yet to take up the question.  The three primary and distinct approaches that have been articulated are a mandatory approach, a discretionary approach, and a causal connection approach.  See *In re Durham*, 461 B.R. 139 (Bankr. D. Mass. 2011) (citing *In re Richter*, 2010 WL 4272915 at *2 (Bankr. N.D. Iowa 2010)).

The first approach, and probably the majority view, holds that the term "following" means "after" and is plain and unambiguous, requiring only that the events identified in section 109(g)(2) occur chronologically or sequentially. See e.g. *In re Anderson*, 209 B.R. 76 (6th Cir. BAP 1997); *In re Richardson*, 217 B.R. 479 (Bankr. M.D. La.1998); *In re Guerrero*, 540 B.R. 270 (Bankr. S.D. Tex. 2015 ); *In re Gibas*, 543 B.R. 570 (Bankr. E.D. Wis. 2016); In re Dickerson , 209 B.R. 703 (W.D. Tenn. 1997) (rejecting a causal reading and finding the statute mandatory); *In re Steele*, 319 B.R. 518 (E.D. Mich. 2005) ("once a motion for relief from stay has been filed, if a debtor chooses to voluntarily dismiss his case, he cannot file another case for 180 days following the dismissal."); *Kuo v. Walton,*

167 B.R. 677 (M.D Fla. 1994) (impliedly embracing the chronological test by finding the statute mandatory).  This approach is also regarded as the "mandatory" or strict statutory construction approach since equating the word "following" with its most commonly accepted equivalent of "after" does not require the court to seek further interpretation. Under this sequential or chronological approach, if a debtor requests and obtains a voluntary dismissal of his case after a party moved for relief from the automatic stay, that person is not eligible for bankruptcy relief in the 180 days after dismissal, and no further inquiry is needed.

      The second, or "causal connection" approach, holds that the term "following" means "as a result of" and requires a judicial determination of a causal relationship between two of the actions referenced in section 109(g)(2).  *In re Payton*, 481 B.R. 460 (Bankr. N.D. Ill. 2012); *In re Rivera*, 494 B.R. 101 (1st Cir. BAP 2013); *In re Duncan*, 182 B.R. 156 (Bankr. W.D. Va. 1995); *In re Copman*, 161 B.R. 821 (Bankr. E.D. Mo. 1993).  Under this "causal" approach, if a debtor requests and obtains voluntary dismissal of his case after a party moves for relief from the stay, the person is ineligible for bankruptcy relief within 180 days only if the court determines he requested and obtained a voluntary dismissal *because of* the parties motion for release from stay.  Courts adopting this approach find that there is an ambiguity with use of the word "following", and using the strict chronological interpretation of equating "following" with "after" could bring about results inconsistent with Congress' intent which was to prevent abusive repetitive filings by debtors who "voluntarily dismiss one case in which relief was sought and then file another case, obtaining repetitive automatic stays to prevent a creditor from taking action against the debtor's property."

6

*Payton*, 481 B.R. 466. "These courts employing the "causal connection" approach note that the chronological approach could apply in cases where the debtor had no motive to abuse, or, at the very least, the creditor seeking the protection was at no risk of frustration. *Id*.

The third, or "discretionary" approach, endorses the chronological or sequential interpretation of " following", but that a literal application of the statute is undesirable. This view adopts a more discretionary approach "because legislative enactments should never be construed as establishing statutory schemes that are illogical, unjust, or capricious." *In re Luna*, 122 B.R. 575, 577 (9th Cir. BAP 1991) (§ 109(g)(2) does not apply if the person acts in good faith in refiling, after she has requested and obtained a voluntary dismissal of her prior case subsequent to the filing of a motion for relief from stay); *In re Howard*, 311 B.R. 230 (Bankr. E.D. Wis. 2004) (if the person shows that no prejudice will occur to the party who moved for relief in the previous case, the 180-day bar should not apply); *In re Beal*, 347 B.R. 87 (E.D. Wis. 2006) (if the motion for relief from stay was withdrawn, dismissed, or denied). These courts would limit application of section 109(g)(2) to those cases where a voluntary dismissal and refiling constitutes an abuse of the bankruptcy process. In effect, this approach engrafts upon the statute the requirement of good faith. One of the problems this Court has with letting the subjective good faith requirement is that it goes against the purpose of the statute. As the purpose of § 109(g)(2) is to combat the mischiefs wrought by the automatic nature of section 362's stay, it is not necessary to read an intentionality component into the section because the sequential or chronological reading can combat both intentional and unintentional frustrations of creditor's rights.

CBM's right to have this case dismissed, and Debtor's potential relief from a dismissal, rests upon how § 109(g)(2) should be construed. That construction begins with the words of the statute itself because courts must presume "that a legislature says in a statute what it means and means in the statute what it says there." *Connecticut National Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146 (1992). Courts "properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'" *Pioneer Investment Services. Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 388, 113 S.Ct. 1489 (1993). Thus, statutory interpretation begins with determining whether the text at issue "has a plain and unambiguous meaning with regard to a particular dispute." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843 (1997). When the words of the statute are unambiguous, the judicial inquiry ends. *Germain*, 503 U.S. at 254, 112 S. Ct.1146. It is also important to note that "while courts may disagree on whether a statute is ambiguous, judicial disagreement does not itself create ambiguity." *Moskal v. United States*, 498 U.S.103, 108, 111 S.Ct. 461 (1990). Therefore, the fact that bankruptcy courts have taken at least three approaches does not *ipso facto* create an ambiguity that compels application of the "causal" or "discretionary-good faith" analysis.

As stated above, the most common (though not only) meaning given to "following" is "after". The Debtor's motion to dismiss was obviously filed after CBM's filing of its Motion for Relief from the Stay. The statute does not qualify the term "following". It does not contain language indicating that there need be a causal relationship between the motion for relief and the motion to dismiss. In this Court's view, "Congress already has, at least

8

implicitly, made the determination that in most instances voluntary dismissal, and later refiling) *are related to the prior request for relief from stay*, and that a mandatory 180-day window between the debtor's bankruptcy cases appropriately prevents debtor abuse and allows creditors to pursue state court remedies." (Emphasis added)*. Gibas,* 543 B.R. at 587; *In re Nelkovski*, 46 B.R. 542, 544 (Bankr. N.D. Ill.1985). Nor did Congress add any requirement of good faith in the debtor's filing of a motion to dismiss the bankruptcy where a motion for relief from the stay has been filed.

In enacting BAPCPA in 2005, Congress made numerous changes and additions to the Bankruptcy Code in the attempt to curb alleged abuses of the bankruptcy laws, some of which target the type of abuse that § 109(g)(2) is designed to prevent. For example, new § 362(b)(21)(A) creates an exception to the automatic stay for "any act to enforce any lien against a security interest in real property if the debtor is ineligible under section 109 to be a debtor in a case under this title." BAPCPA also added new § 362(c)(3),(4) and 362(d)(4) to discourage bad faith repeat filings and curb abusive filings. While amending other parts of § 109, Congress did not change 109(g)(2) notwithstanding the three or four-way split of authority concerning its interpretation. The presumption is that Congress said in § 109(g)(2) exactly what it said. Otherwise, it could have amended 109 (g)(2) by adding "unless the court, in its discretion, orders otherwise" at the end of paragraph (2); or it could have substituted "because of" for "following"; or it would have added at the end of the paragraph, "that was pending or unresolved at the time the debtor requested and obtained the voluntary dismissal." The Court believes that Congress intended to leave the plain language intact, and it must be applied. In a matter of first impression, this Court adopts

9

the mandatory or sequential approach to the interpretation of §109 (g)(2).[3]

In the present case, Debtor appears to challenge the applicability of § 109(g)(2) not by urging use of the "causal" or "discretionary or good faith" approaches to the statute; rather, by asserting a fourth approach that there was no motion for relief from stay *pending* at the time he sought and obtained dismissal of his first bankruptcy case.  The Court will examine the three cases cited by Debtor in his Response that § 109(g) (2) does not compel dismissal of this case .

*In re Milton*, 82 B.R. 637 (Bankr. S.D. Ga. 1988) held that where the parties "in good faith believed that they had settled and resolved the issues raised in the previous motion for relief from stay" (although the motion had not been dismissed or withdrawn) the court deemed the motion for relief to be moot and irrelevant to the question of the debtor's eligibility to refile under § 109(g)(2).  Section 109(g) was not violated "because as of the date of the refiling there was, legally speaking, no pending motion for relief from stay that was unresolved in the previously filed and dismissed Chapter 13 case." *Id.*  This obviously differs from the present case where the motion for relief from stay was granted and bankruptcy refiled in order to frustrate CBM's foreclosure action by dismissing the case and refiling in order to impose a new automatic stay.

The second case cited by the debtor, *In re Jones*, 99 B.R. 412 (Bankr. E.D. Ark. 1989) held that "section 109 (g)(2) applies only if there is a contested matter pending at the

---

[3] Even if this Court were to adopt the causal or discretionary approach, the Debtor would not be eligible for relief under the Code. The Debtor's filing of two bankruptcies within three days of the dates set for two confirmation of sheriff's sales and after CBM had obtained relief from stay in the first case establishes a causal relationship and eliminates any possibility that dismissing this case would be an absurd or too-harsh a result.

time of the voluntary dismissal." In that case, the motion for relief from stay was denied after which the debtor voluntarily dismissed her case. She then refiled bankruptcy within 180 days of the dismissal. Again, this differs from the present case in that the dismissal of the first case in *Jones* could not be said to be connected to the motion for relief because it had been denied.

The third case cited by the debtor, *In re Patton*, 49 B.R. 587 (M.D. Ga. 1985) discusses the legislative history behind the enactment of the "Consumer Credit Amendments" section of the Bankruptcy Amendments and Federal Judgeship Act, Pub.L. No. 98–353, Title III, Subtitle A, § 301, 98 Stat. 333, 352 (1984) which added section 109(f), the predecessor to section 109(g)(2). The *Patton* court, in recognizing that section 109(f) was designed to curb abuses of the bankruptcy system, stated, in language applicable to the case before this Court:

> [S]ection § 109(f)(2) is intended to address the situation in which the debtor files a bankruptcy case to stay a foreclosure, and when the creditor seeks relief from the stay, the case is then voluntarily dismissed by the debtor. The debtor then refiles prior to the creditor's completing his next attempt to foreclose, and through this scheme, the debtor can continually frustrate the creditors attempts to foreclose."

That is, of course, different than the situation presented in *Patton*, but precisely what the Debtor is attempting to do in the present case.

The three cases cited by Debtor, which appear to be the only cases holding that there need be a "pending" motion for relief from stay are simply, in this Court's view, bad law. Nowhere in the three opinions is there set forth any discussion or rational basis for the holding that there must be a pending motion for relief at the time of the dismissal of the

11

debtors first bankruptcy case. This view is erroneous because of both the language of the statute and the purpose for which it was enacted. The language of § 109(g)(2) contains no reference whatsoever to a requirement that the motion be pending. It simply says "following the filing of a request for relief from the automatic stay." Such a restrictive reading of § 109(g)(2) would eviscerate the underlying policy rationale for the rule. As stated in *In re Dickerson*, 209 B.R. 703, 707 (W.D. Tenn. 1997):

> In enacting § 109(g)(2), Congress intended "to prevent debtors from frustrating creditors' attempts to recover funds owed to them" by prohibiting debtors from engaging in a series of filings and voluntary dismissals, thereby continuously invoking the automatic stay of the bankruptcy code. *In re Ulmer,* 19 F.3d 234 (5th Cir. 1994). By restricting the application of § 109 (g)(2) to those cases where there is a pending, unresolved motion for relief from stay at the time of the voluntary dismissal, these courts [*Milton, Jones* and *Patton* cited by Debtor in the present case] ignore the reality of these proceedings. In fact, a literal interpretation of these cases would allow a debtor to refile continuously, thereby obtaining the protection of the automatic stay, so long as it did not dismiss the previous action while the motion for relief from stay was pending before the Court. Thus, in cases where the relief from stay is granted prior to the voluntary dismissal, the debtor would be able to use the bankruptcy code to frustrate the ability of a creditor to regain its property – the exact result that § 109(g)(2) is designed to prevent.

The Court rejects Debtor's contention that the fact that CBM's Motion for Relief from Stay was not "pending" at the time of the voluntary dismissal of the case precludes dismissal of this case under § 109(g)(2).

## IV. Conclusion

The Court finds that the language of § 109(g)(2) is mandatory. The statute specifically states that no individual can be a debtor if within the preceding 180 days the

individual requested and received a voluntary dismissal of the first case following the filing of a request for relief from the automatic stay. If these preconditions are met, the debtor is barred from filing the second petition for 180 days after the voluntary dismissal, and the Bankruptcy Court is prohibited from accepting the petition for filing. As noted above, the Court interprets these provisions to include the situation present here, where the Debtor voluntarily dismissed the first case after the automatic stay was lifted. Accordingly,

**IT IS ORDERED** that CBM's Motion to Dismiss is hereby **Granted**, and this case is **Dismissed with Prejudice** to filing another petition under Title 11 for 180 days from this date.[4]

# # #

---

[4] The Court notes that the running of the 180 day period is tolled during the pendency of an improperly filed bankruptcy petition. *In re Wilson*, 85 B.R. 72, 73 (Bankr. N.D. Ill. 1988): "It would appear that any debtor's attorney worth his salt could file a case in the face of Section 109(g)(2) and postpone resolution of the 109(g)(2) issue for all or most of the 180, thereby nullifying the Congressional intent underlying §109(g)(2)."